**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**JERMAL ARRINGTON,**

                                        **Petitioner,**

        **-v-**                                                        **9:08-CV-70**
                                                                        **(TJM)**
**MARK L. BRADT,**

                                        **Respondent.**

**APPEARANCES:**                                **OF COUNSEL:**


**JERMAL ARRINGTON, Petitioner** *pro se*
**03-A-5700**
**Mt. McGregor Correctional Facility**
**1000 Mt. McGregor Road**
**Box 2071**
**Wilton, New York 12831**

**HON. ANDREW M. CUOMO**                        **PAUL M. TARR, ESQ.**
**Attorney General for the State of New York**      **Assistant Attorney General**
**Attorney for Respondent**
**120 Broadway**
**New York, New York 10271**

**THOMAS J. McAVOY**
**SENIOR U.S. DISTRICT JUDGE**

## DECISION AND ORDER

### I.  Introduction

        Presently before the Court is Petitioner Jermal Arrington's amended petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. No. 5. Petitioner challenges his October

21, 2003 conviction following a jury trial of first degree criminal sale of a controlled substance

(N.Y. PENAL LAW § 220.43(1)) and two counts of second degree criminally using drug

paraphernalia, third degree criminal possession of a controlled substance (N.Y. PENAL LAW

§§220.50(2) and (3)).  Petitioner was sentenced to serve an aggregate indeterminate term of twenty years to life.  *See* Dkt. No. 5 at 1.  The New York Supreme Court, Appellate Division, Third Department, affirmed Petitioner's judgment of conviction on July 6, 2006, and the New York State Court of Appeals denied him leave to appeal on October 19, 2006.  *See People v. Arrington,* 31 A.D.3d 801 (3d Dep't. 2006), *lv. denied* 7 N.Y.3d 865 (2006). Petitioner was re-sentenced by the Albany County Supreme Court on January 29, 2008, pursuant to New York's Rockefeller Drug Law Reform Act, to a determinate term of twelve years in prison followed by five years of post-release supervision for first degree criminal sale of a controlled substance, and a concurrent term of one year on each of his convictions for criminally using drug paraphernalia. *See* Dkt. No. 16, Ex. A, B.[1]

Petitioner raises the following grounds for habeas relief: (1) the evidence was legally insufficient to support his conviction for criminally using drug paraphernalia; (2) the evidence was insufficient to support his conviction for criminal sale of a controlled substance because there was no corroboration of an accomplice's testimony; and (3) his right to a speedy trial was violated.  *See* Dkt. No. 5 at 6-9.  For the reasons that follow, the petition is **DENIED**.

## II. <u>Background</u>

### A. <u>Facts</u>

The following factual summary is derived from the state court records. Beginning in 1999, the Capital District Drug Task Force ("Task Force") investigated several cocaine operations in an effort to dismantle them.  One of the targets of the investigation was Curtis

---

[1]On January 31, 2008, Petitioner filed a Notice of Appeal following his re-sentencing. *See* Dkt. No. 16, Ex. C. According to Respondent, as of November 17, 2008, the appeal had not yet been perfected. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 2 n. 1.  Petitioner has raised no sentencing-based claims in his habeas petition.

Raleigh, whom the Task Force believed to be a low-level drug dealer.  Transcript of Trial of Jermal Arrington ("Trial Tr."), at 6-9.[2]

On June 5, 2001, the Task Force arranged a controlled buy of crack cocaine between Raleigh and a confidential informant, Jerome Walker, in an effort to discover the identity of Raleigh's supplier.  Trial Tr. at 10-12, 46.  Walker had purchased smaller amounts of cocaine from Raleigh in the past.  *Id.* at 88-89, 144-46.  At the direction of the Task Force, Walker contacted Raleigh by phone and eventually arranged to buy 100 grams of crack cocaine from him for $3,500.00.  *Id.* at 10-11, 13-14, 78-80, 133.

When Raleigh received Walker's call, he was with Petitioner in downtown Albany.  Trial Tr. at 131-32.  Raleigh did not have 100 grams of crack cocaine, but Petitioner told Raleigh he had that amount, and told Raleigh to meet him at North Manning Boulevard near Lark Street in Albany.  *Id.* at *Id.* at 76-77, 132-34.  Raleigh called Walker, and told him to meet him at that location.  *Id.* at 133.

Walker was searched and then outfitted by Senior Investigator Lennie Daniels of the New York State Police and Special Agent Terrence Dunlap of the Drug Enforcement Agency ("DEA") with two separate listening and recording devices to transmit and record the conversation between Raleigh and Walker.[3]  Trial Tr. at 19-20, 81-83, 256-58. The serial numbers of the buy money were also recorded.  *Id.* at 11, 232-35.  Members of the Task Force

---

[2]"Trial Tr." followed by a number refers to the pages of the trial transcript containing witness testimony taken on August 21, 22, 25 and 26, 2003.  The transcript of the proceedings that took place on August 18, 20 and 21, 2003, contain jury selection, opening statements and various legal motions and arguments that are not challenged by Petitioner in his petition.

[3]Walker was outfitted with a micro-cassette recorder and a device known as a Kel-Kit, commonly referred to as a "wire."  Trial Tr. at 19-20, 81-83, 256-58.

dropped Walker off a few blocks from the arranged meeting location and watched as he walked to a dumpster located across the street from 620 Manning Boulevard and waited. *Id.* at 20-23, 81-82. Detective Richard Gould, also part of the surveillance team, parked his vehicle in a lot across from 620 Manning Boulevard and climbed into the back of his vehicle to observe the transaction. *Id.* at 179-81.

At approximately 8:00 p.m., Petitioner drove up the street on a motorcycle and stopped at 620 Manning Boulevard. Trial Tr. at 82, 96. A short time later, Raleigh also arrived on a motorcycle, traveling from the same direction as Petitioner. *Id.* at 82, 95, 133-34, 187-88. Raleigh nodded to Walker, and Walker understood him to be signaling that "everything is all right." *Id.* at 82, 97, 101-02, 187.

Detective Gould watched as Raleigh went to the front of 620 Manning Boulevard, where he rang the bell and asked if Petitioner was there. *Id.* at 134, 138, 187. Petitioner came out of the house and gave Raleigh a baseball-sized object wrapped in plastic. *Id.* at 134-35, 154-56, 187. Petitioner left the location on Raleigh's motorcycle as Raleigh crossed the street to meet with Walker. Trial Tr. at 137-39, 167. Raleigh handed Walker the object Petitioner gave him in exchange for the $3,500.00 in pre-recorded buy money. *Id.* at 30-31, 54-55, 82-83, 104-05, 134-35, 187-88. After the exchange, Raleigh put the money in his pocket and walked away from the location and down the street to a basketball court, where he met with Petitioner and gave him $3,200.00 *Id.* at 64-66, 135-36, 157-58, 167, 188. Raleigh kept the remaining $300.00. *Id.* at 135-36.

Walker left the area and met with Investigator Daniels. He turned over the object Raleigh gave him, and Daniels retrieved the recording devices from Walker. Trial Tr. at 30-34,

83-84. The object later tested positive for cocaine weighing 98.7 grams (approximately three ounces). *Id.* at 117-24. Walker was paid $300.00 for his role in the controlled buy. *Id.* at 84. No photographs or videos were made recording the controlled buy. *Id.* at 205-07.

Police recovered the $300.00 Raleigh kept when he was arrested on June 6, 2001. *Id.* at 135-36, 235-36, 243, 297-98. Raleigh pleaded guilty in federal court to criminal sale of a controlled substance in exchange for a sentence ranging between 151 and 188 months. *Id.* at 129-30, 146-48, 165-66. He testified against Petitioner at trial in the hope that his cooperation would result in a downward departure on his federal sentence. *Id.* at 130, 145-50.

On June 7, 2001, a search warrant was executed at the second floor of 1172 Broadway, a residence owned by Petitioner's mother. Trial Tr. at 189-90. Police stopped Petitioner in front of the residence, handcuffed him, and escorted him into 1172 Broadway. *Id.* at 189-90. The first bedroom on the right was filled with men's clothing and Timberland boots. *Id.* at 190. Detective Gould has known Petitioner between twenty-three and twenty-five years and testified he had seen Petitioner wearing some of the clothing. *Id.* at 218-21. Police also recovered a box of bullets in a bureau by the bed, and a bag of bullets in the closet. *Id.* at 190-91.

In a second bedroom, police recovered a pile of loose plastic bags lying on top of a dresser and took them into evidence because they are commonly used to package cocaine. Trial Tr. at 192-94. Several photographs of Petitioner were also found. *Id.* at 196, 277. Agent Dunlap recovered a drug ledger containing code words used to describe narcotics, two rental agreements for vehicles in Petitioner's name, additional photographs of Petitioner, and a digital scale from the livingroom of the home. Another scale was recovered from the kitchen area. *Id.* at 268-81, 335-36.

Finally, police found a black bag in the ceiling of 1172 Broadway that contained approximately $12,600. Trial Tr. at 237.  Police matched the serial numbers for $2,800 of that money to the prerecorded buy money, and the remaining money was submitted for forfeiture.  *Id.* at 237-38, 282-85. The bag also contained a box of plastic bags, a condom, a used plastic baggie with a white residue, and two additional digital scales.  One of the scales had a white powdery substance on it. *Id.* at 287-90.

### B.  <u>State Court Proceedings</u>:

On October 18, 2002, an Albany County Grand Jury returned a three-count indictment charging Petitioner with first degree criminal sale of a controlled substance[4] and two counts of second degree criminally using drug paraphernalia.[5] *See* Resp't Mem. at 1.

Defense counsel moved to dismiss the indictment, alleging that the delay between the time of the controlled buy and the subsequent indictment constituted a denial of his speedy trial rights.  In a Decision and Order dated August 15, 2003, the trial court denied the motion.  *See* Dkt. No. 16,  Ex. D at 1. The court found that Petitioner was arrested by federal officials on "June 7, 2001 on a criminal complaint for charges that were not the subject of the present indictment." *Id.*  Defense counsel entered into plea negotiations, including a possible cooperation agreement, that continued until Petitioner was indicted. *Id.* at 1-2. Under these

---

[4]This count of the indictment originally listed the location of the sale as "the corner of Lark Street and Manning Boulevard."  *See* Trial Tr. at 250.  On August 22, 2003, the trial court permitted an amendment to this count to more accurately reflect the location of the sale as "opposite 620 Manning Boulevard."  *Id.* at 250-51.

[5]Although not entirely clear from the state court records, it appears that the paraphernalia counts were based upon the plastic bags and the scales found in the black bag with the prerecorded buy money. *See* Dkt. No. 16, Ex. G (prosecutor's appellate brief), at 5 ("The strongest evidence that demonstrates the defendant's dominion and control over the area where the drug paraphernalia was located is the prerecorded buy money found in the black bag with the scales and plastic bags."); Trial Tr. at 565 (the prosecutor, in summation, argued that the contents of People's Exhibit 22, which included the prerecorded buy money, the plastic bags and two digital scales, was "what this case is all about.").

circumstances, the trial court found the delay was justified, and that Petitioner failed to demonstrate prejudice. *Id.* at 2-3.

A jury trial began on August 18, 2003 and concluded on August 26, 2003. At the close of the People's case, Petitioner presented a defense and called five witnesses. Vincent Carrington testified that he lives at 620 Manning Boulevard and that Petitioner lived in the downstairs portion of the house with Carrington's daughter. Trial Tr. at 346-47. On June 5, 2001, Carrington saw a group of men, including Petitioner, on motorcycles near the front of his house gambling. *Id.* at 348-51. He yelled at Petitioner and the others to leave. Carrington testified that no one rang the bell looking for Petitioner on June 5, 2001. *Id.* at 353.

Rasheem Andrews testified that on June 5, 2001, he joined a dice game being played by Petitioner and others in front of 620 Manning Boulevard. Trial Tr. at 363-66. Between 8:00 p.m. and 8:15 p.m., Raleigh arrived on his motorcycle. Raleigh parked and walked across the street. When he returned, Raleigh had a large amount of money. *Id.* at 366-67. Raleigh gave the keys to his motorcycle to Delos White, who drove it around the block. *Id.* at 367-68, 467-68. Raleigh joined the dice game and lost a large sum of money to Petitioner. *Id.* at 369-71, 384. White left the dice game when Carrington told the group to leave. *Id.* at 372.

Lenone Clark testified that Petitioner is his foster brother and the father of Clark's sister's baby. Trial Tr. at 387-88. Clark spoke to Raleigh on June 5, 2001 and met with Raleigh at a local park. *Id.* at 399-400, 404. According to Clark, Raleigh told him that he sold 100 grams of cocaine to Walker for $3,500 and lost a large amount of that money gambling. *Id.* at 393-95. Clark told Raleigh that he was suspicious of the transaction because he did not think Walker could have purchased that quantity on his own. *Id.* at 395-96.

Naydene Arrington testified that Petitioner did not live at 1172 Broadway in 2001. Trial Tr. at 410-12. Arrington testified that Petitioner could have been at her house on June 1, 2001, because he "comes in anytime", *id.* at 449, and that he was at the house on May 22, 2001 because that day is his birthday. *Id*. Arrington further testified that the black bag police recovered from the ceiling belonged to her, that she used the bag to store money, that only she and her mother knew where the bag was stored, and that on June 7, 2001, the bag contained $13,668.38. *Id.* at 413-23, 443-45. She did not put the plastic bags, scales or the condom in the bag. *Id.* at 414-17. Arrington stated that some of the money came from a settlement her mother received following a car accident. According to Arrington, she loaned Petitioner $3,000 to help him buy a used motorcycle and on June 5, 2001, Petitioner repaid her $2,800. *Id.* at 418-19, 441, 445.

Arrington also testified that a police agent told her they found the money, that she told the agent it belonged to her, and the agent told her that he would be in touch with her regarding how to make a claim for the money. Trial Tr. at 424-26. At the time of the trial, Arrington still had not filed a claim for the money, because a lawyer told her that she had to wait for forms to come in the mail and she had not yet received them. *Id.* at 425-27, 440-42. Finally, Arrington testified that the digital scale that police recovered from the kitchen area of the house was used to measure food proportions for her mother's diet, but that she had never seen the scale recovered from her livingroom before. *Id.* at 277-79, 335-36, 426-30, 441.

Petitioner's final witness was Delos White. He testified that on June 5, 2001, he saw Petitioner and a group of other people gambling near 620 Manning Boulevard and he stopped to speak to Petitioner about a motorcycle rally. Trial Tr. at 459-62. Raleigh arrived at approximately 8:00 p.m. on a motorcycle, parked, and walked across the street. When Raleigh

returned, he let White ride his motorcycle. *Id.* at 464-67. Raleigh had a "wad" of money in his pocket. *Id.* at 467. Raleigh was upset because he was losing a lot of money to Petitioner in the dice game. *Id.* at 469-71, 477-78, 480-81.

The prosecutor called Detective Richard Gould in rebuttal. Trial Tr. at 490. Gould testified that on June 7, 2001, at 1172 Broadway, he asked Naydene Arrington where Petitioner's motorcycle was located, and she told him Petitioner did not own a motorcycle. *Id.* at 490-91. When Gould told Arrington about the money found in the ceiling, she "looked at [him] kind of funny" and said nothing about the money. *Id.* at 491-92. Detective Gould also testified that the bag in which the money was found smelled, in his experience, like crack cocaine. *Id.* at 491-94.

On August 26, 2003, the jury convicted Petitioner of all charges. Trial Tr. at 638-43. On October 17, 2003, counsel moved to set aside the verdict pursuant to section 330.30 of New York's Criminal Procedure Law ("CPL"), arguing that (1) the evidence was insufficient to sustain his convictions; (2) the trial court erred when it refused to charge the jury that Raleigh was an accomplice; (3) the trial court erred when it permitted rebuttal evidence from a police officer who testified that the bag containing the buy money smelled like crack cocaine; (4) the trial court erred when it charged the jury that Petitioner could constructively possess drug paraphernalia jointly and severally with others; (5) he was denied due process and the effective assistance of counsel because the prosecutor improperly withheld evidence until "the last possible moment"; (6) there was prosecutor misconduct and erroneous rulings by the trial court; and (7) the prosecution violated their obligation to timely turn over discovery materials. Dkt. No. 16, Ex. E. The trial court denied the motion on October 21, 2003, and sentenced Petitioner to an indeterminate term of twenty years to life in prison for first degree criminal sale of a controlled

substance, and additional concurrent terms of one year for each of the second degree criminally using drug paraphernalia charges.  *See* Resp't Mem. at 8; Dkt. No. 16, Ex. A, at 1.[6]

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Third Department.  Dkt. No. 16, Ex. F.  Although he listed seven separate issues in the "Questions Presented" section of the brief, *see* Ex. F. at 1-2, Petitioner presented argument on three grounds: (1) the evidence was insufficient to establish that Petitioner constructively possessed the drug paraphernalia; (2) the evidence failed to establish a prima facie case of first degree criminal sale of a controlled substance because Raleigh's testimony was not corroborated; and (3) the indictment should have been dismissed on speedy trial grounds. Ex. F at 8-13.

The People opposed the appeal, arguing that the evidence was sufficient to show Petitioner constructively possessed the contraband because (1) Detective Gould recognized clothing and footwear that belonged to Petitioner in one of the bedrooms of 1172 Broadway; (2) Petitioner was seen coming and going from the home in May and June; (3) there were photographs of Petitioner in the house; (4) police recovered two vehicle rental agreements in Petitioner's name from the house; and (5) there was $2,800 in prerecorded buy money found in a bag with a digital scale and plastic bags.  *See* Ex. G at 4-5.  The People also argued that Raleigh's testimony was sufficiently corroborated by Walker and Detective Gould.  *Id.* at 6-8. Finally, the People argued that the sixteen-month delay between Petitioner's arrest in June 2001 and his indictment in October 2002 did not violate his right to a speedy trial because the delay was caused by plea negotiations regarding Petitioner's cooperation in another investigation, and Petitioner failed to show he was prejudiced by the delay.  *Id.* at 9-10.

---

[6]The sentencing transcript was not provided to the Court.

In his reply brief, Petitioner reiterated his claims that the evidence was insufficient to establish constructive possession and that his right to a speedy trial had been violated.  Dkt. No. 16, Ex. H at 2-4.  Petitioner also argued that the People conceded "multiple points requiring vacatur" of Petitioner's conviction, including (1) the lack of accomplice instructions to the jury; (2) the testimony concerning the smell of the bag containing the money; and (3) "violations of [Petitioner's] constitutional rights of due process and effective assistance of counsel resulting from disclosure improprieties." *Id.* at 1. Petitioner also argued for the first time that Walker was also an accomplice.  *Id.* at 1-2.

On July 6, 2006, the Appellate Division affirmed Petitioner's convictions. *People v. Arrington*, 31 A.D.3d 801 (3d Dep't. 2006).  The court found that there was no constitutional violation of Petitioner's right to a speedy trial because the delay between his arrest and indictment was due to plea negotiations and Petitioner did not show he suffered prejudice as a result of the delay.  *Id.* at 802. The court further found that the evidence established that Petitioner constructively possessed the drug paraphernalia because he was seen coming and going from the residence during the week before his arrest, his clothing was discovered during the execution of the search warrant, there were two vehicle rental agreements in his name in the house, and police found $2,800 of the prerecorded buy money at the house.  *Id.* at 803. The Appellate Division also ruled that there was sufficient evidence that corroborated Raleigh's testimony to connect Petitioner to the sale, including the testimony of one of the police officers and Walker. *Id.* at 803-804. Finally, the Appellate Division stated that it "considered Petitioner's remaining arguments and find them to be without merit."  *Id.* at 804. It noted, however, that "to the extent that [Petitioner] assigns error to County Court's refusal to declare the confidential

informant an accomplice, . . . the confidential informant was an agent of the police." *Id.*

The New York Court of Appeals denied leave to appeal on October 19, 2006. *People v. Arrington*, 7 N.Y.3d 865 (2006); Dkt. No. 16, Ex. K.

### C.   This Action

Petitioner filed his petition for a writ of habeas corpus on January 18, 2008. *See* Dkt. No. 1. In an Order dated March 4, 2008, Petitioner was directed to file an amended petition, and complied with that Order on April 7, 2008. *See* Dkt. Nos. 4, 5. Because Petitioner failed to sign his amended petition, he was directed to sign and submit an affidavit pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* Dkt. No. 7. Petitioner submitted the Rule 11 affidavit on April 25, 2008. Dkt. No. 8.

On November 17, 2008, the Office of the New York State Attorney General, acting on behalf of Respondent, filed an answer to the petition, a memorandum of law, and the relevant state court records. *See* Dkt. Nos. 15-17.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.[7] *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir. 2006), *cert. denied* 549 U.S. 1215 (2007); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (citing 28 U.S.C. § 2254(d)), *cert. denied* 546 U.S. 884 (2005).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Williams,* 529 U.S. at 405-06). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Id.* at 74 (citing *Williams*, 529 U.S. at 413). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Id.* (citing § 2254(e)(1)); *see DeBerry*, 403 F.3d at 66.

**B.  Sufficiency of the Evidence - Criminally Using Drug Paraphernalia**

Petitioner was convicted of two separate counts of second degree criminally using drug paraphernalia relating to the plastic bags (N.Y. PENAL LAW § 220.50(2)) and digital scales (N.Y. PENAL LAW § 220.50(3)) found in the black bag in the ceiling of 1172 Broadway.  *See* Trial Tr. at

---

[7] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 537 F.3d 102, 106 (2d Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

600-01; 638-39.  In Ground One of his habeas petition, Petitioner alleges that the evidence was insufficient to sustain these convictions because he was not in actual physical possession of the contraband when it was seized, and because it was found in a "dwelling for which petitioner had no control or legal standing." Dkt. No. 5, Ground One, at 6.  Respondent argues that this claim is without merit.  Resp't. Mem. at 25-28.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White,* 531 U.S. 225, 228-29 (2001)(per curiam); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995).  This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993)(emphasis in original). The habeas court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319. "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.' " *Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied* 528 U.S.

1170 (2000)).

To sustain Petitioner's conviction for criminally using drug paraphernalia based upon possession of the plastic bags, the state had to prove that Petitioner knowingly possessed "material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant." N.Y. PENAL LAW § 220.50(2).  To sustain Petitioner's conviction for criminally using drug paraphernalia under section 220.50(3) based upon possession of the digital scales, the state had to prove that Petitioner knowingly possessed "[s]cales and balances used or designed for the purpose of weighing or measuring controlled substances, under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug [.]" N.Y. PENAL LAW § 220.50(3).  Possession is proven when a person has "physical possession" or otherwise exercises "dominion or control over tangible property."  N.Y. PENAL LAW § 10 (8).  A person's dominion or control over property is established where the evidence shows the person had "a sufficient level of control over the area in which the contraband [was] found or over the person from whom the contraband is seized." *Montes De Oca v. Walsh*, No. 04 Civ. 2227, 2007 WL 4591991, at *13 (S.D.N.Y. Dec. 27, 2007)(quoting *People v. Manini*, 79 N.Y.2d 561, 573 (1992)).

Petitioner's claim that the evidence was insufficient because he was not in actual physical possession of the plastic bags and digital scales is unavailing.  As the Appellate Division held, the evidence was sufficient to show that Petitioner had constructive possession of these objects:

> [h]ere, not only did the evidence establish that during the investigation, defendant was observed coming and going from his mother's house in the week before his arrest, but during the execution of the search warrant, the police located clothing and shoes belonging to defendant in a bedroom of the house, two automobile rental agreements in defendant's name and, most telling, a leather bag containing $12,600, $2,800 of which matched the money used to fund the drug buy. When viewed in a light most favorable to the People, this evidence sufficiently establishes constructive possession.

*Id.* (citations omitted). That decision is entitled to AEDPA deference, and is supported by the record. *See* Trial Tr. at 188-200, 217-21, 235-38, 266-92, 336-37. Although Petitioner did not own or lease the house located at 1172 Broadway, that "does not preclude a finding of constructive possession since possession may be joint." *People v. Elhadi*, 304 A.D.2d 982, 984 (3d Dep't. 2003)(citing *People v. Tirado*, 38 N.Y.2d 955, 956 (1976)), *lv. denied* 100 N.Y.2d 580 (2003). *See also People v. Hyde*, 302 A.D.2d 101, 105 (1st Dep't. 2003)("That a defendant neither owns nor leases the area where the contraband is found does not preclude a finding of constructive possession since possession may be joint.").  As the Appellate Division found, Petitioner freely came and went from 1172 Broadway, and police recovered his clothing, two vehicle leases in his name, several photographs of Petitioner, and the prerecorded buy money - in a bag with the plastic bags and scales in question - in the ceiling at that location. That evidence was sufficient to show Petitioner constructively possessed the plastic bags and scales. *See e.g., Hernandez v. Conway*, 485 F. Supp. 2d 266, 282 (W.D.N.Y. 2007) (evidence sufficient to sustain conviction for criminally using drug paraphernalia where glassine bags and a small quantity of drugs were found inside a car and petitioner was seen throwing glassine bags containing a white powdery substance out the window)(citing *United States v. Gordils*, 982 F.2d 64, 71-72 (2d Cir. 1992) (holding that evidence was sufficient to convict defendant of possession of heroin because

the jury could have reasonably concluded that defendant knowingly had the power and intention to exercise dominion and control over heroin found in apartment, based on the discovery of heroin, glassine envelopes, diluents, and other materials used to prepare heroin for distribution lying in plain view in living room in which defendant was sitting); *Morales v. Strack*, Nos. 99-CV-1617 & 03-MISC-0066, 2003 WL 21816963, at *5 (E.D.N.Y. Jul. 3, 2003)("it was not necessary for the prosecution to show that petitioner was the leaseholder of the apartment or that he lived in the apartment" to establish constructive possession of the drugs and drug paraphernalia found inside; the evidence was sufficient to establish constructive possession where petitioner possessed keys to the apartment, memorized the combination of a safe in the apartment, and kept personal papers and photographs in the apartment), *aff'd* 116 Fed. Appx. 293 (2d Cir. 2004)(summary order); *Hediam v. Miller*, No. 02 Civ. 1419, 2002 WL 31867722, at *12 (S.D.N.Y. Dec. 23, 2002)(evidence sufficient to support conviction for first degree criminal possession of a controlled substance and second degree criminally using drug paraphernalia where defendant exercised control over the apartment in which the contraband was found in plain sight in an open bedroom, even though the bedroom was allegedly rented to another person).

The Appellate Division's determination that the evidence established Petitioner's dominion and control over 1172 Broadway and his constructive possession of the plastic bags and scales was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and the petition on this ground is denied.

### C.  Corroboration of Accomplice Testimony

In Ground Two of his petition, Petitioner argues that the evidence was "insufficient to establish a prima facie case of criminal sale of a controlled substance" because the testimony of

17

an "alleged accomplice" was not corroborated. *Id.* at Ground Two, 7-8. Respondent argues that

this claim arises solely under state law and is therefore not cognizable on habeas review. *Id.* at

23-25.

On direct appeal, Petitioner cited to CPL § 60.22 for the proposition that the prosecution

was required to provide corroboration for the testimony of his alleged accomplice, Curtis

Raleigh, and failed to do so.[8] Dkt. No. 16, Ex. F, at 10. Claims that are based solely on state law

grounds are generally not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62,

67 (1991) (citation omitted). *See Lewis v. Jeffers*, 497 U.S. 764, 765 (1990)(federal habeas

corpus relief "does not lie for errors of state law.").

Additionally, Petitioner "has not identified a parallel federal constitutional right requiring

the same corroboration, nor does one appear to exist." *Dann v. Rabideau*, No. 05-CV-0969,

2008 WL 2704900, at *6 (N.D.N.Y. Jul. 7, 2008)(citing *United States v. Elusma*, 849 F.2d 76, 79

(2d Cir.1998) ("An accomplice's testimony ... need not be corroborated to establish guilt."), *cert.*

*denied* 489 U.S. 1097 (1989))(further citations omitted). Under federal law, the "testimony of a

single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible

on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v.*

*Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003)(quoting *United States v. Gordon*, 987 F.2d 902, 906

(2d Cir. 1999)(internal quotations omitted)), *cert. denied* 540 U.S. 985 (2003). *See Caminetti v.*

*United States*, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing

convictions on the testimony of accomplices if juries believe them."). Corroboration or the lack

---

[8] Section 60.22(1) states "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. CRIM. PROC. § 60.22(1).

of corroboration of an accomplice's testimony "goes only to the weight of the evidence, not to its sufficiency", and a challenge to the weight of the evidence "is a matter for argument to the jury [.]" *Hamilton,* 334 F.3d at 179 (quoting *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989)), *cert. denied* 490 U.S. 1109 (1989)); *see Martinez v. Walker*, 380 F. Supp. 2d 179, 184 (W.D.N.Y. 2005)(same).  Since Petitioner's claim is purely a state law matter, it is barred from habeas review.  *See Huntley v. Superintendent*, No. 00-CV-191, 2007 WL 319846, at * 17 (N.D.N.Y. Jan. 30, 2007) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.)("petitioner's claim that the accomplice testimony of Marcano and Rodriguez was not sufficiently corroborated is based solely on the accomplice corroboration requirement of New York state law, *see* N.Y. CPL § 60.22, does not constitute a claim in violation of a federal constitutional right, and therefore also is not cognizable on federal habeas corpus review."); *Dawson v. Donnelly*, 111 F. Supp. 2d 239, 251 (W.D.N.Y. 2000) (accomplice corroboration rule "is a state law and not a Constitutional requirement, and may not be raised in a Federal habeas petition."); *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 136 (W.D.N.Y. 2000) ("Lyon's Second Claim, which is based on a New York statute that requires corroboration of accomplices' testimony does not implicate a Federal right.").

Moreover, the evidence was sufficient to show Petitioner knowingly and unlawfully sold crack cocaine to Walker that weighed "two ounces or more."  N.Y. PENAL LAW § 220.43(1). Raleigh testified that he obtained 100 grams of crack cocaine from Petitioner, and that he gave Petitioner $3,200.00 of the pre-recorded buy money he received from Walker.  Trial Tr. at 132-36, 139-40, 154-55, 158-60.  Detective Gould testified that he saw Petitioner exit the house located at 620 Manning Boulevard and hand Raleigh an object the size of a baseball, that Raleigh

later handed that same object to Walker in exchange for the prerecorded buy money, and that the

object tested positive for cocaine weighing 98.7 grams, or "a little over three ounces." *Id.* at 187-

88, 122-24. Walker also confirmed that Raleigh interacted with Petitioner prior to the exchange.

Specifically, Walker testified that Raleigh arrived at the pre-arranged meeting location, nodded to

him, and then walked over to Petitioner before crossing the street and handing Walker the

package of crack cocaine.  Trial Tr. at 82-83, 96-107, 112-14.[9]  Finally, Petitioner constructively

possessed $2,800 of the prerecorded buy money recovered from 1172 Broadway. Since there is

no requirement under federal law that an accomplice's testimony be corroborated, and the

evidence was sufficient, this claim fails to establish a violation of Petitioner's federal rights, and

is dismissed.

To the extent that Petitioner argues in the alternative, as counsel did on direct appeal, that

the trial court erred by refusing to charge the jury "with accomplice instructions", (Dkt. No. 5,

Ground Two, at 7-8), that claim is also dismissed because federal law does not require an

accomplice liability jury charge.  *Young v. McGinnis*, 411 F. Supp. 2d 278, 297 (E.D.N.Y.

2006)("[f]ederal law does not require a coconspirator charge to the jury requiring corroborating

evidence[.]"), *aff'd*. No. 06-0941-pr, 2009 WL 792788, at *1 (2d Cir. Mar. 27, 2009)(holding

that "regardless of whether there was a violation of state law in denying [a petitioner's] request

for an accomplice-corroboration instruction, there was no violation of federal law, let alone of

---

[9]Although Walker testified at trial that he did not see Petitioner give Raleigh anything, he admitted his memory was fresher on June 5, 2001 than it was two years later at trial. *Id.* at 99-101.  At the time of the drug exchange, Walker was recorded stating that Raleigh may have gotten the cocaine from Petitioner, and so stated to the police and in his grand jury testimony.  *Id.* at 98-100, 104-06, 116-17. It was within the province of the jury to accept or reject Walker's testimony. *See Quartararo v. Hanslmaier*, 186 F.3d 91, 95, 96 (2d Cir. 1999) (federal habeas courts must not assume "the position of a thirteenth juror" ; "inconsistencies were for the jury to resolve" not the district court)(citing *Herrera v. Collins*, 506 U.S. 390, 401 (1993)), *cert. denied* 528 U.S. 1170 (2000).

any federal constitutional right.")(summary order). *See also Besser v. Walsh*, No. 02 Civ. 6775, 2003 WL 22093477, at *24 (S.D.N.Y. Sept. 10, 2003)(since "there is no federal constitutional rule requiring the corroboration of accomplice testimony", "even an incorrect jury instruction on the accomplice corroboration rule would not have violated Besser's federal constitutional right to a fair trial.")(citations omitted), *adopted* 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003). Accordingly, the trial court's decision not to instruct the jury on accomplice liability did not violate Petitioner's federal constitutional right to a fair trial. *See Young,* 411 F. Supp. 2d at 297*; Besser,* 2003 WL 22093477, at *24. This claim is also dismissed.

D.    **Speedy Trial**[10]

Petitioner next claims, as he did before the trial court and on direct appeal, that his right to a speedy trial was denied because the crimes were committed in June 2001, but he was not indicted until October 2002.  Dkt. No. 5, Ground Three, at 9. Respondent argues that this claim is without merit.

The record does not support a claim that Petitioner's constitutional speedy trial rights were violated.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. CONST. amend. VI.  In determining whether there has been a constitutional speedy trial violation, courts should consider the length of the delay and whether it was "uncommonly long,"  the reason for the delay, including whether the government or the defendant was responsible for it; the defendant's assertion of the right; and whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992)(citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *Smith v. Murray*, No.

---

[10]Petitioner does not appear to argue that the time between the indictment in October 2002 and his trial in August 2003, an additional ten months, violated his right to a speedy trial, and never raised such a claim in state court.

03-CV-6553L, 2007 WL 2581687, at *3, 7 (W.D.N.Y. Sept. 5, 2007); *Dexter v. Artus*, No. 01-CV-237, 2007 WL 963204, at *6-7 (N.D.N.Y. Mar. 27, 2007)(McAvoy, S.J., adopting Report-Recommendation of Bianchini, M.J.). If the length of the delay is presumptively prejudicial, courts will then analyze the remaining three factors.  *Barker*, 407 U.S. at 530; *Dexter*, 2007 WL 963204, at *6.

The length of the delay between Petitioner's arrest on June 7, 2001 and indictment on October 2002 was approximately sixteen (16) months. The Second Circuit has stated that there is a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice], while a delay of less than five months does not." *Dexter*, 2007 WL 963204, at *6 (quoting *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992), *cert. denied* 506 U.S. 1009 (1992)(citations omitted)).  *See United States v. Marley*, No. 01-CR-339, 2006 WL 3544929, at *3 (N.D.N.Y. Dec. 8, 2006)(Scullin, J.) ("Although there is no bright-line standard as to what constitutes a presumptively prejudicial delay, courts generally agree that the threshold is crossed as the delay approaches one year."). While a sixteen-month delay may be presumptively prejudicial, it does not, *per se*, establish a violation of petitioner's Sixth Amendment right to a speedy trial.  The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases where the delay was much longer.  *See, e.g., Barker*, 407 U.S. at 533-34 (five years); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990)(twenty-six months); *Rayborn v. Scully*, 858 F.2d 84, 89, 93-94 (2d Cir. 1988)(eighty-six months), *cert. denied* 488 U.S. 1032 (1989); *Flowers v. Warden, Connecticut Corr. Institution, Somers, Conn*., 853 F.2d 131, 133 (2d Cir. 1988)(seventeen months), *cert. denied* 488 U.S. 995 (1988).

When analyzed under the remaining three *Barker* factors, the sixteen-month delay here did not violate Petitioner's constitutional right to a speedy trial. *See Dexter*, 2007 WL 963204, at *8 ("The presumption of prejudice that arises with a long delay must be analyzed in connection with the reason for the delay.")(citing *Doggett*, 505 U.S. at 655). As the Appellate Division found, the reason for the delay in this case "resulted in large measure from negotiations with [Petitioner] regarding entry of a plea and cooperation with respect to further drug investigations." *Arrington*, 31 A.D.3d at 802. On this record, there does not appear to have been any "deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. *See e.g., Pjetrovic v. Bennett*, No. 00 Civ. 0398, 2002 WL 32780, at *6 (S.D.N.Y. Jan. 3, 2002)("the record indicates that much of the eleven-month adjournment period was due to motion practice, plea negotiations, and other reasons that serve as legitimate justifications for the delay. Additionally, there is no indication that the government made any "bad faith" attempts to delay Pjetrovic's trial. This factor, therefore, does not favor Pjetrovic's speedy trial claim.").

Finally, Petitioner has failed to allege or show how he suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 532; *see Dexter*, 2007 WL 963204 at *8 (stating that a petitioner must show " 'particular prejudice' " because " 'presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts.' ") (quoting *United States v. Solomon*, No. 95 Cr. 154, 1996 WL 399814, at *5 (S.D.N.Y. Jul. 16, 1996) (quoting *Doggett*, 505 U.S. at 655)). Since there does not appear to have been any deliberate delay on the part of the prosecution, and there is no indication of actual prejudice, Petitioner's speedy trial claim is dismissed.

**IV. Certificate of Appealability**

For the reasons set forth above, the petition for a writ of habeas corpus filed by Petitioner is **dismissed.** No certificate of appealability ("COA") shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003)("§ 2253(c) permits the issuance of a COA only where a petitioner has made a " 'substantial showing of the denial of a constitutional right.' "); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)("Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

**WHEREFORE,** after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is

**ORDERED** that Petitioner's amended petition for a writ of habeas corpus (Dkt. No. 5) is **DENIED** and **DISMISSED**; and it is

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Petitioner and the Respondent in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 2, 2009

Thomas J. McAvoy
Senior, U.S. District Judge